**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- X

YVETTE SETHY and DARLENE GONZALEZ,      :   Case No. 1:23-cv-03452-RA
individually and on behalf of all others similarly    :
situated,                                         :   Judge Ronnie Abrams

                            Plaintiff,     :

                 -against-           :

VICTORIA'S SECRET STORES, LLC,          :

                     Defendant.    :

----------------------------------------------------------------- X

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT VICTORIA'S SECRET STORES, LLC'S MOTION TO DISMISS OR STAY PROCEEDINGS</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND LEGAL BACKGROUND ........................................................................ 3

      A.      Plaintiff's Allegations ............................................................................3

      B.      History of Timely Pay Claims ...............................................................3

LEGAL ARGUMENT........................................................................................................... 5

      A.      Plaintiffs' Complaint Should be Dismissed Because No Private Right of Action Exists for a Pay-Frequency Claim ...............................................5

            1.      The Plain Language of the NYLL Does Not Provide a Private Right of Action for Violations of NYLL § 191 .......................................... 6

            2.      In the Absence of Statutory Authorization for a Private Right of Action, the Court Should Not Find that the Legislature Implicitly Created One ................................................................................... 13

            3.      *Vega* Does Not Bind the Court ................................................. 13

      B.      Alternatively, The Court Should Stay the Case Pending a Ruling in the *Grant* matter, Which Will Provide Additional State Court Guidance On the Availability of a Private Right of Action for Plaintiff's Claim.......................16

CONCLUSION..................................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arciello v. Cnty. of Nassau*, No. 2:16-cv-3974 (ADS)(SIL), 2019 U.S. Dist.
LEXIS 161167 (E.D.N.Y. Sept. 20, 2019) ................................................................... 4

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) .............................................................. 12

*Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601 (2d Cir.
1999) ............................................................................................................................. 11

*Carrera v. DT Hospitality Grp.*, 2021 U.S. Dist. LEXIS 210894 (S.D.N.Y.
Nov. 1, 2021) ................................................................................................................ 14

*Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534 (RPK) (SJB), 2021 U.S.
Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021) ......................................................... 14

*Century Diner Buffet, Inc.*, PR 12-180 (Indus. Bd. of Appeals July 13, 2016) ............. 4

*Clark v. Suarez Martinez*, 543 U.S. 371 (2005) .......................................................... 12

*Grant v. Global Aircraft Delivery Dispatch, Inc.*, App. Div. No. 21-03202 (2d
Dep't) .............................................................................................................. 2, 16, 17

*Grant v. Global Aircraft Dispatch*, No. 720074/2019, 2021 N.Y. Misc. LEXIS
11125 (Queens Cnty Sup. Ct. Apr. 20, 2021) ......................................................... 2, 16

*Harris v. Old Navy, LLC*, No. 21 Civ. 9946 (GHW) (GWG), 2022 U.S. Dist.
LEXIS 206664 (S.D.N.Y. Nov. 15, 2022) ................................................................... 10

*Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-932 (ERK)(VVP), 2012 U.S. Dist.
LEXIS 152254 (E.D.N.Y. Oct. 23, 2012) .................................................................... 4

*IKEA U.S. v. Indus. Bd. of Appeals*, 660 N.Y.S.2d 585 (App. Div. 2d Dep't 1997) ..... 8

*Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856 (VEC), 2022 U.S. Dist. LEXIS
78299 (S.D.N.Y. Apr. 29, 2022) ................................................................................. 14

*Konkur v. Utica Acad. Of Sci. Charter Sch.*, 185 N.E.3d 483 (N.Y. 2022) ........... 13, 15

*Landis v. North American Co.*, 299 U.S. 248 (1936) ................................................... 16

*Matter of Marian T. (Lauren R.)*, 161 N.E.3d 460 (N.Y. 2020) .................................... 6

*Negrin v. Norwest. Mortg., Inc.*, 263 A.D. 2d 39 (App. Div. 2d Dep't 1999) ............... 6

*New York Power Authority v. U.S.*, 42 Fed. Cl. 795 (Fed. Cl. 1999) ........................... 16

*Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13 (2d Cir. 2003) ......................................... 13

*Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d. 4 (E.D.N.Y. 2020) ................................................................................................................................. 14

*Quintanilla v. Kabo Pharmaceuticals, Inc.*, Case No. 19-06752 (E.D.N.Y. June 30, 2020) ................................................................................................................... 14

*Ram Hotels, Inc.*, PR 08-078 (Indus. Bd. of Appeals Oct. 11, 2011) ....................................... 4, 8

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126 (2d Cir. 2007) ........................... 14, 15, 17

*Ribble (d/b/a Perfecto Cleaners)*, PR 06-038, 039 (Indus. Bd. of Appeals, Dec. 19, 2007) ........................................................................................................................ 8

*RJS Janitorial, LLC*, PR 15-148 (Indus. Bd. of Appeals, Oct. 24, 2018) ..................................... 8

*Rodrigue v. Lowe's Home Ctrs., LLC*, No. 20-CV-1127 (RPK) (RLM), 2021 U.S Dist. LEXIS 162849 (E.D.N.Y. Aug. 27, 2021) ........................................................... 14

*Samiento v. World Yacht Inc.*, 883 N.E.2d 990 (N.Y. 2008) ...................................................... 7

*Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114 (2d Cir. 1994) ........................................ 15

*United States v. Dauray*, 215 F.3d 257 (2d Cir. 2000) ............................................................. 10

*United States v. Shapiro*, No. 21-CV-02475 (GRB) (JMW), 2021 U.S. Dist. LEXIS 220176 (E.D.N.Y. Nov. 15, 2021) ...................................................................... 16

*United States v. Venturella*, 391 F.3d 120 (2d Cir. 2004) ......................................................... 10

*Vega v. CM & Assoc. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (App. Div. 1st Dep't 2019) ................................................................................................................... passim

*Williams v. MTA Bus Co.*, 44 F.4th 115 (2d Cir. 2022) ............................................................ 10

*Zivkovic v. Laura Christ, LLC*, No. 1:17-cv-553-GHW, 2022 U.S. Dist. LEXIS 94839 (S.D. N.Y. May 26, 2022) ................................................................................. 14, 15

**Statutes**

New York Labor Law § 190(4) ...................................................................................................... 3

New York Labor Law § 191 .................................................................................................. 3, 4, 5, 6

New York Labor Law § 191(1)(a) ................................................................................................ 1, 9

New York Labor Law § 191(1)(a)(1) ......................................................................................... 3, 16

iii

New York Labor Law § 191(a) ................................................................................................ 3

New York Labor Law § 194 ................................................................................................ 15

New York Labor Law § 195 ........................................................................................... 12, 15

New York Labor Law § 198 ......................................................................................... passim

New York Labor Law § 198(1)(d)(3) ..................................................................................... 5

New York Labor Law § 198(1-a) ................................................................................. passim

New York Labor Law § 198(1-b) .................................................................................. 12, 15

New York Labor Law § 198(1-d) ......................................................................................... 12

New York Labor Law § 218 ............................................................................................... 7, 8

New York Labor Law § 218(1) .............................................................................................. 8

**Other Authorities**

https://dol.ny.gov/unpaidwithheld-wages-and-wage-supplements (last visited
August 15, 2022) ................................................................................................................... 7

https://industrialappeals.ny.gov/system/files/documents/2020/02/pr06038.pdf ............................ 8

https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-08-078.pdf ...................... 4, 8

https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-12-180.pdf ......................... 4

https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-15-148.pdf ......................... 8

*Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-
webster.com/dictionary/less. Accessed August 15, 2022 ......................................................... 9

N.Y. Dept. of Labor "Labor Standards Complaint Form"
https://dol.ny.gov/system/files/documents/2021/03/ls223.pdf (last visited
August 15, 2022) ................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 5

**Constitutional Provisions**

U.S. Const. amend. XIV, § 2 ................................................................................................ 12

## PRELIMINARY STATEMENT

Plaintiffs Yvette Sethy and Darlene Gonzalez allege they worked for Defendant Victoria's Secret Stores, LLC ("VSS" or the "Company") in New York between April 2015 and August 2018. During that time, they were paid on a biweekly pay schedule – the same pay schedule routinely utilized by employers in New York and nationwide. Plaintiffs contend that they and a putative class of current and former VSS New York associates qualify as "manual workers" and therefore should have been paid weekly pursuant to New York Labor Law ("NYLL") § 191(1)(a).[1]

On this basis, Plaintiffs ask the Court to award them (and putative class members) liquidated damages in an amount equal to roughly 50% of their (and each class member's) total wages earned while working for VSS.[2]  However, New York's legislature never created a private right of action for the claim alleged by Plaintiffs. Plaintiffs' proper remedy would have been to file a complaint with the New York Department of Labor ("NYDOL"), who in turn would have issued civil penalties if appropriate.

Here though, Plaintiffs seek to proceed based on a seven-paragraph decision issued by an intermediate New York appellate court, which held that the legislature created a private right of action for the failure to pay manual workers on a weekly basis. *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (App. Div. 1st Dep't 2019). As detailed below, *Vega*'s reasoning is faulty and perfunctory on multiple levels. Nonetheless, *Vega* opened the floodgates to hundreds

---

[1] VSS disputes that either Plaintiff was a "manual worker" but will assume that Plaintiffs qualify as manual workers solely for purposes of this motion.

[2] In their Amended Complaint, Plaintiffs define a putative class as a group of employees employed between February 14, 2017 and the date of final judgment in this matter. (Am. Compl., ¶ 22.) This alleged class period is incorrect for two reasons. First, the initial Complaint in this matter was filed on April 25, 2023, meaning that the NYLL's six-year statute of limitations extends back to April 25, 2017, not February 14, 2017. Second, VSS received permission from the New York DOL to pay employees biweekly on January 7, 2021. https://s3.us-east-1.amazonaws.com/fonteva-customer-media/00D61000000dOrPEAU/SAHlvOlq_authorized_employers_monthly_report.pdf. Thus, the proper alleged putative class period should be April 25, 2017 until January 7, 2021.

of lawsuits that, like this one, seek astronomical financial penalties for paying employees on a biweekly instead of weekly basis.

While federal courts have often deferred to *Vega*, its holding does not bind this Court. There is ample reason to believe that the New York Court of Appeals will ultimately decide this issue differently than the First Department and hold that no private right of action exists. Indeed, in recent months, another intermediate court of appeals in New York heard argument on this same issue after a New York trial court reached a conclusion opposite to *Vega*'s. This pending case, considered in conjunction with *Vega*'s faulty reasoning and related decisions by the Court of Appeals, leads to the conclusion that New York's Court of Appeals would not hold as the *Vega* court did if presented with these issues. Accordingly, Defendant requests that the Court dismiss Plaintiffs' Amended Complaint because they lack a private right of action.

Finally, if the Court is not inclined to dismiss Plaintiffs' Complaint for failure to state a claim at this time, it should stay this matter pending the outcome of *Grant v. Global Aircraft Delivery Dispatch, Inc.*, App. Div. No. 21-03202 (2d Dep't). In *Grant*, the Second Department of the New York Appellate Division, a co-equal court to *Vega*, is considering the same question at issue here: whether a private right of action exists for the failure to pay manual workers on a weekly basis. The underlying trial court found, consistent with pre-*Vega* case law, that a private right of action does not exist. *Grant v. Global Aircraft Dispatch*, No. 720074/2019, 2021 N.Y. Misc. LEXIS 11125 at **4-7 (Queens Cnty Sup. Ct. Apr. 20, 2021). The case has been argued before the Second Department and a decision is expected in the near future. The ruling in *Grant* will provide important guidance to this Court as to how New York courts, including New York's Court of Appeals, are likely to consider these cases going forward.

## FACTUAL AND LEGAL BACKGROUND

### A.   Plaintiffs' Allegations

Plaintiffs' Complaint is brief and similar to numerous lawsuits brought against retailers post-*Vega*.  Plaintiffs allege that they were employed at various VSS locations in New York roughly five years ago.  (Am. Compl., ECF No. 10, ¶¶ 9, 11.)  Plaintiff Sethy alleges that she was a "Sales Manager" and Plaintiff Gonzalez that she was a Merchandise Processor and Selling Associate.  (*Id.*)  Each claims that she performed "manual labor" for at least 25% of her working time by "folding clothing . . . carrying clothing to or from the stock room . . . fixing displays . . . stocking shelves . . . helping customers with fittings . . . bagging clothing . . . removing tags . . . maintaining the stock room . . . and . . . standing for long periods of time."[3]  (*Id.*, ¶ 41.)

Importantly, Plaintiffs do not allege that VSS failed to pay them for all hours worked or that there are any wages due to them.  Instead, they allege that they should have been paid on a weekly basis, as opposed to biweekly, because they qualified as "manual workers" under NYLL § 191(1)(a)(1).  The pay frequency claim is the only cause of action Plaintiffs assert on behalf of themselves and the putative class they seek to represent.  (*Id.*, ¶¶ 47– 49.)

### B.   History of Timely Pay Claims

Section 191 of the NYLL lays out New York's pay frequency requirements.  Relevant here, the law provides that employers must pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned."  NYLL § 191(a).  The NYLL defines "manual workers" to include mechanics, workingmen, or laborers.  NYLL § 190(4).

---

[3] Again, VSS does not concede that all of these activities constitute "manual labor" under the NYLL, nor does it concede that Plaintiffs or the putative class spent 25% of their working time engaged in activities that would constitute manual labor.

Historically, courts consistently held that no private right of action was available for violations of pay frequency rules under NYLL § 191.  *See, e.g., Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-932 (ERK)(VVP), 2012 U.S. Dist. LEXIS 152254, at *8 (E.D.N.Y. Oct. 23, 2012) (dismissing frequency of pay claim because "[t]he NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment"); *Arciello v. Cnty. of Nassau*, No. 2:16-cv-3974 (ADS)(SIL), 2019 U.S. Dist. LEXIS 161167, at *22 (E.D.N.Y. Sept. 20, 2019) (dismissing NYLL § 191 claim because NYLL § 198 does not provide a remedy for frequency of payment violations).  Instead, the New York Department of Labor handled such violations administratively.  *See, e.g., Century Diner Buffet, Inc.*, PR 12-180 at p. 13 (Indus. Bd. of Appeals July 13, 2016) (assessing civil penalty for pay-frequency violation)[4]; *Ram Hotels, Inc*., PR 08-078 at p. 2 (Indus. Bd. of Appeals Oct. 11, 2011) (same).[5]

This landscape changed dramatically in 2019, when a panel in the First Department of the New York Appellate Division issued a short opinion holding that a private right of action is available for claims that an employer paid wages on a biweekly instead of weekly basis.  *Vega*, 107 N.Y.S.3d 286.  In that case, the First Department reasoned (incorrectly) that such an action existed because the failure to pay wages weekly qualified as an "underpayment" of wages under NYLL § 198, which provides for a private right of action for wage claims along with potential liquidated damages in an amount equal to the "underpayment."[6]  *Id.* at 288.

---

[4] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-12-180.pdf

[5] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-08-078.pdf

[6] The court alternatively reasoned that a private right of action could be implied because it would "promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* at 289.  However, recognizing a private right of action would actually be inconsistent with the legislative scheme and contrary to subsequent New York Court of Appeals precedent.  *See infra* at p. 13.

The consequences of this ruling are stunning.  Assume an employer has paid its manual workers all wages owed, consistent with an announced and regular biweekly pay schedule.  Under *Vega*, as Plaintiffs interpret it, <u>half of those fully paid wages would be "underpaid" and recoverable as liquidated damages</u>.

Conservatively estimating that each manual worker makes $15.00 per hour, the employer would owe each full-time worker approximately $15,600 in damages per year.[7]  If that employer had 15 manual workers, its liability would be over $200,000 in a single year.  Those figures increase exponentially because NYLL § 198 (the statute under which Plaintiffs and others allege there is a private right of action) has a six-year statute of limitations.  (NYLL § 198(1)(d)(3)).  The small employer of 15 manual workers would owe more than $1 million in damages for that six-year period.  An employer with 500 employees would owe approximately **$45,000,000**.[8]  And it is worth repeating that, under Plaintiffs' theory of the law, these eye-popping (and potentially business-ending) damages would be owed simply because the business paid its employees all wages owed on a biweekly instead of weekly basis.

## LEGAL ARGUMENT

### A.    Plaintiffs' Complaint Should be Dismissed Because No Private Right of Action Exists for a Pay-Frequency Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss Plaintiffs' Amended Complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Here, Plaintiffs fail to state a claim because there is no private right of action for a failure to pay wages weekly pursuant to NYLL § 191.  Rather, any such violations are the subject of administrative enforcement. *See* NYLL § 218.

---

[7] $15 x 40 (hours) x 52 (weeks) = $31,200.  $31,200/2 = $15,600.

[8] These numbers are so grossly excessive as to prompt constitutionality concerns.  *See infra* at pp. 12-13.

1.     **The Plain Language of the NYLL Does Not Provide a Private Right of Action for Violations of NYLL § 191**

"Not every violation of a statutory provision is actionable by an individual aggrieved by its breach.  Rather, there must be either an express or implied private right of action conferred upon aggrieved parties." *Negrin v. Norwest. Mortg., Inc.*, 263 A.D. 2d 39, 46 (App. Div. 2d Dep't 1999) (internal citations omitted).  In making this determination, the "clearest indicator of legislative intent is the statutory text."  *Matter of Marian T. (Lauren R.)*, 161 N.E.3d 460, 462 (N.Y. 2020) (internal quotation omitted).  Here, the plain text of the relevant statutes makes clear that the legislature did not expressly provide a private right of action for timely pay claims.

    a.     *Timely Pay Claims Are Not Actionable Under Section 198 Because They Are Non-Wage Claims*

Section 191 of the NYLL establishes the pay frequency requirements at issue in this case. Section 191 does not contain any mention of damages or a private right of action and Plaintiffs do not allege otherwise.  *See* NYLL § 191.  Instead, Plaintiffs suggest that NYLL § 198, which does not even mention pay frequency claims, provides a private right of action for them.  (Am. Compl. ¶ 49.)  The relevant portion of NYLL § 198 states as follows:

> **In any action instituted in the courts upon a *wage claim*** by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . .

NYLL § 198(1-a) (emphasis added).

Based on the plain language of the statute, a pay frequency claim is only covered by Section 198(1-a) if it is considered a "***wage claim***."  It is therefore notable that the *Vega* court never engaged in an analysis of what does and does not qualify as a "wage claim."  Had it conducted

such an analysis, it would have reached the unambiguous conclusion that a timely pay claim (1) is not a wage claim; and (2) is therefore not subject to the penalties described in Section 198(1-a).

The New York Department of Labor has consistently treated pay frequency claims as "***non-wage claims***" to be handled administratively under NYLL § 218, not NYLL § 198.  As the agency charged with enforcing the NYLL, the NYDOL's interpretations are entitled to deference.  *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 995 (N.Y. 2008) ("[t]he Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference").  On its website instructing employees on the process for filing claims, the NYDOL groups violations into four categories.  *See* https://dol.ny.gov/unpaidwithheld-wages-and-wage-supplements (last visited June 19, 2023).  Frequency of pay claims are included in the "Non-Wage Items" category.  *Id.* ("Your employer failed to provide the required meal period, day of rest, pay stub, notice of pay, **timely payment of wages**, or took a negative action against you for making a complaint related to the Labor Law.") (emphasis added).  And on its Labor Standards Complaint Form, it again classifies timely payment issues as a ***non-wage complaint***.  *See* N.Y. Dept. of Labor "Labor Standards Complaint Form" (Mar. 2021), at Part 8, No. 37h, available at Labor Standards Complaint Form (LS223) (ny.gov) (last visited June 19, 2023) (emphasis added).

Treating timely pay claims as non-wage claims does not mean that those requirements are unenforceable.  NYLL § 218 provides that the Labor Commissioner can enforce compliance with this and other non-wage requirements contained in the NYLL through an action that includes imposition of civil penalties.  *See* NYLL § 218.

Faced with the option of pursuing these sorts of claims under NYLL § 198(1-a) or NYLL § 218, the NYDOL has consistently issued Orders treating frequency of pay claims as a "non-wage" matters and defended those Orders before the New York Industrial Board of Appeals.  *See,*

*e.g.*, *Ribble (d/b/a Perfecto Cleaners)*, PR 06-038, 039 at p. 5 (Indus. Bd. of Appeals, Dec. 19, 2007) (upholding Commissioner's Order providing $1,000 penalty for failure to pay manual workers weekly)[9]; *RJS Janitorial, LLC*, PR 15-148 at p. 10 (Indus. Bd. of Appeals, Oct. 24, 2018) (overturning Commissioner's Order providing a $6000 penalty for failure to pay manual workers weekly because the amount exceeded the statutory maximum allowed under NYLL 218(1))[10]; *Ram Hotels, Inc.*, PR 08-078 at p. 2 (Indus. Bd. of Appeals Oct. 11, 2011) (upholding Commissioner's Order providing $100 penalty for failure to pay manual workers weekly).[11]

New York appellate courts have also reviewed and confirmed such awards. *See IKEA U.S. v. Indus. Bd. of Appeals*, 660 N.Y.S.2d 585 (App. Div. 2d Dep't 1997). In *Ikea*, the Second Department of the New York Appellate Division (a co-equal court to the *Vega* court), reviewed and upheld an NYDOL Commissioner's Order providing that an employer who failed to pay its manual workers on a weekly basis owed a civil penalty. *Id.* at 586.

The *Vega* court (1) never analyzed the meaning of "wage claim" in NYLL § 198; (2) never analyzed NYLL § 218; and (3) never analyzed how the NYDOL treats frequency of pay claims. Those considerations each would have foreclosed the conclusion the court ultimately reached on the proper mechanism for enforcing timely pay requirements.

### b.   Failure to Timely Pay Wages Is Not an "Underpayment"

Instead, overlooking the crucial threshold question of whether a frequency of pay claim is a wage claim, the *Vega* court solely focused on Section 198(1-a)'s use of the term "underpayment" and determined that an untimely payment constitutes an underpayment. Plaintiffs' claim here is

---

[9] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr06038.pdf

[10] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-15-148.pdf

[11] https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-08-078.pdf

premised on this Court reaching the same conclusion.  However, both the plain meaning of the word *underpayment* and its context in the NYLL dictates that untimely pay is not an underpayment.

Definitionally, *Vega* relied on a dictionary definition of "underpay," as "to pay less than what is normal or required," the court held that an "underpayment" of wages occurs "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a)."  *Vega*, 107 N.Y.S.3d at 288.  This definition does not encompass untimely payments.  The term "less than" used in the definition unambiguously refers to quantity, not frequency.[12]  Thus, "to pay less than" would mean paying a smaller amount or quantity, not to pay later than required.

Turning to context, *Vega*'s definition of "underpayment" also conflicts with the rest of Section 198(1-a), which again focuses on payment amount, not frequency.  Of particular relevance here, the statute provides for potential liquidated damages (the damages Plaintiffs seek) "equal to one hundred percent of the total ***amount of the wages found to be due***."  NYLL § 198(1-a) (emphasis added).  The phrase "one hundred percent" refers to an ***amount*** of wages found owing, not frequency.  So too does the "amount of the wages found to be due."  And, again, no one is contending that there are still wages due to Plaintiffs or any putative class members.

Furthermore, considering how words would commonly be used outside of the provisions of a statute, it would be unusual for an employee who expects to be paid on a biweekly basis, and is paid all amounts earned on a biweekly basis, to nonetheless claim that she was "underpaid."  On the contrary, the employee was paid all the wages she earned on her regularly scheduled payroll date.  She does not have a claim for unpaid wages and there would be no "wages found to be due."

---

[12] The same dictionary the *Vega* court relied on defines "less" as "constituting a more limited number or amount"; "of lower rank, degree, or importance"; "of reduced size, extent, or degree"; or "more limited in quantity." "*Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/less. Accessed June 19, 2023.

In sum, Plaintiffs' claim requires the Court to read the term "underpayment" to mean "late payment," ignore NYLL § 198(1-a)'s references to "wages found to be due" in explaining the scope of damages it made available, and adopt an understanding of the statute that upends the normal use of the words it contains.

       *c.*      ***If the Court Finds the Statute to Be Ambiguous, Canons of Construction Provide Further Support for the Conclusion that NYLL § 198 Does Not Cover Frequency of Pay Claims***

When courts find the text of a statute to be ambiguous, they turn to "traditional canons of statutory construction for guidance in resolving that ambiguity." *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022) (citing *United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000)). Here, two of those canons lend further support to the conclusion that New York's legislature never intended to impose crippling liability on employers for technical violations of timely pay laws.

First, "[a] statute should be interpreted in a way that avoids absurd results." *United States v. Venturella*, 391 F.3d 120, 127 (2d Cir. 2004) (quoting *Dauray*, 215 F.3d at 264). Plaintiffs' interpretation is a plainly absurd result. As noted above, an employer employing 500 people over a six-year class period would owe $45 million in damages per this interpretation, even though it paid all employees all wages earned on a regular pay schedule.

Compare that figure to the actual alleged harm that plaintiffs in these cases claim to suffer. In many motions to dismiss like this one, defendant employers have challenged plaintiffs' ability to establish Article III standing for timely pay claims. Courts have generally rejected this position, noting that the lost time value of money is sufficient to establish standing for Article III purposes. *See Harris v. Old Navy, LLC*, No. 21 Civ. 9946 (GHW) (GWG), 2022 U.S. Dist. LEXIS 206664, at *8 (S.D.N.Y. Nov. 15, 2022) (collecting cases). Plaintiffs' Amended Complaint here reflects that approach, as they allege that, due to the biweekly payment of wages, "Plaintiffs were unable

10

to do those things that every person does with their money, such as paying bills or buying goods that she needed or wanted to buy."  (Am. Compl., ¶ 45.)  Plaintiffs do not articulate any other actual harm allegedly suffered.

VSS is not challenging Plaintiffs' standing in this Motion, but raises these issues to note for the Court the disparity between the alleged harm suffered (lost time value of money) and the damages sought (half of all wages paid).  The time value of money can be quantified, but it is not measured by the amount of money withheld without regard for how long the money was withheld; courts instead calculate interest to determine the value lost while money was withheld.[13]  *See, e.g., Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601, 608 (2d Cir. 1999) (describing interest as the proper measure of the time value of money).

Returning to the example above, Plaintiffs' approach would lead to $45 million in damages (half of all wages paid over six years).  A measure of damages that tried to capture the time value of money would be a fraction of that.  Assuming the highest rate over the class period here (2.5% annually), the measure of the time value of money lost would be only roughly $21,634.62, 2,080 times more than what someone taking Plaintiffs' position would ask a court to award.

In addition to the disparity between the liquidated damages proposed and the actual harm suffered demonstrating a facially absurd result, the manner in which the legislature (according to Plaintiffs) prescribed that result only compounds the absurdity.  In Plaintiffs' view, the legislature created this damages regime without mentioning frequency of pay claims in the statute where they

---

[13] For the 2017–2021 putative class period here, the interest rate set by the Federal Reserve ranged from 1.0% (set on March 16, 2017) to 2.5% (set on December 20, 2018), going as low as 0.0% (set on March 16, 2020).  The lost time value of money alleged here would be one week of value, given that the amount owed would have been paid the following week.

created it.  They find that the legislature did so by covertly including frequency of pay claims in its conception of "underpayment," despite the definitional incongruity discussed above.

If that is not enough, there is a final step to the absurdity. The legislature actually *did* mention other technical violations of the NYLL that are not wage claims, and provided for commensurate damages for them in Section 198.  *See* NYLL § 198(1-b) ($50 per day for failure to provide notices at start of employment as required by NYLL § 195, up to $5,000 maximum); (1-d)  ($250 per day for failure to provide wage statements required by NYLL § 195, up to $5,000 maximum).  So Plaintiffs' interpretation would require finding that the legislature imposed damages that dwarf the alleged harm incurred in the timely pay context without explicitly explaining it was doing so, even though it explicitly mentioned other technical requirements for which it was creating a private right of action in the same statute.  It would further require the Court to find that the legislature would impose massive damages for this technical violation at the same time it established more modest damages for other violations in the same statute.  The more straightforward explanation is that the legislature simply never considered NYLL § 198 to encompass timely pay claims at all.

Second, the Court can look to the canon of constitutional avoidance.  It "is a tool for choosing between competing plausible interpretations of a statutory text" that rests on the idea that the legislature "did not intend the alternative which raises serious constitutional doubts."  *Clark v. Suarez Martinez*, 543 U.S. 371, 381 (2005).

Here, interpreting NYLL § 198(1-a) to provide for a private right of action for frequency of pay claims (and its attendant mandatory 100% liquidated damages) would produce damage awards that are "grossly excessive" in violation of the Due Process Clause of the Fourteenth Amendment.  *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996).  *See also, Parker v. Time Warner*

*Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (noting that the same concerns the Supreme Court expressed regarding due process and punitive damages may equally apply to a "devastatingly large damages award, out of all reasonable proportion to the actual harm suffered" in a class action that results from the aggregation of individual class members' claims). As outlined above, under Plaintiffs' reading of NYLL § 198(1-a), an employer with 500 employees could easily be subject to a damages award of **$45,000,000** or more. The canon of constitutional avoidance offers the Court an additional basis to avoid this potentially unconstitutional result and conclude that NYLL § 198(1-a) does not create a private right of action for frequency of pay violations.

### 2. In the Absence of Statutory Authorization for a Private Right of Action, the Court Should Not Find that the Legislature Implicitly Created One

Perhaps recognizing the tenuousness of its holding that New York's legislature explicitly created a private right of action for pay frequency claims, the *Vega* court held in the alternative that the legislature implicitly created such an action. *Vega*, 107 N.Y.S.2d at 288–89. The Court should reject this holding because it is incompatible with the subsequent New York Court of Appeals decision in *Konkur v. Utica Acad. Of Sci. Charter Sch.*, 185 N.E.3d 483, 488 (N.Y. 2022). In *Konkur*, the New York Court of Appeals held that "[w]here the legislature intended for an article 6 [of the NYLL] provision to be enforced individually, it expressly provided a private right of action." *Konkur*, 185 N.E.3d at 488. The Court should adopt this same approach and hold that there is no implied private right of action for the failure to pay manual workers on a weekly basis.

### 3. *Vega* Does Not Bind the Court

VSS recognizes that federal courts generally follow decisions of intermediate state appellate courts in interpreting state law and that most courts considering this issue have done so with *Vega*. For the reasons discussed herein, *Vega* was wrongly decided. Indeed, many federal courts that have

followed *Vega* have done so begrudgingly or with little analysis.[14]  For example, Judge Chen of the

Eastern District of New York described the reasoning in *Vega as* "tortured":

> "I will say, candidly, I find the reasoning in *Vega* a little bit – it's going to
> sound too harsh – ***a little tortured***; but, nonetheless, it is an appellate
> decision on an issue of New York statutory law interpretation, and . . . I, as
> well as state courts, are bound to follow appellate court decisions unless I'm
> convinced – or unless there is substantial evidence or reason to believe that
> the Court of Appeals would find otherwise."

*Quintanilla v. Kabo Pharmaceuticals, Inc.*, Case No. 19-06752, Tr. p. 17 (E.D.N.Y. June 30, 2020)

(emphasis added).

But another path is available.  Last year, a judge of this Court declined to follow a First

Department appellate decision regarding NYLL § 198 (one of the same statutes at issue here).

*Zivkovic v. Laura Christ, LLC*, No. 1:17-cv-553-GHW, 2022 U.S. Dist. LEXIS 94839, at *5

(S.D.N.Y. May 26, 2022).  In *Zivkovic*, the court rejected the First Department decision because it

"ran contrary to the clear text of Section 198" and "failed to engage at all with the relevant text of the

statutes." *Id.* at *4-8.

The *Zivkovic* court acted appropriately because it is well established that the "[d]ecisions

of a state's intermediate and lower courts [interpreting state law] are not binding on the federal

courts." *Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d. 4, 10 (E.D.N.Y. 2020).

When determining an open issue of New York law, a federal court's role "is to determine how the

New York Court of Appeals would decide them." *Reddington v. Staten Island Univ. Hosp.*, 511

F.3d 126, 133 (2d Cir. 2007) (internal citation omitted).

---

[14] *See Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856 (VEC), 2022 U.S. Dist. LEXIS 78299, at *12 (S.D.N.Y. Apr. 29, 2022) (noting that federal courts have "consistently" relied on *Vega* to find that there is a private right of action); *Rodrigue v. Lowe's Home Ctrs., LLC*, No. 20-CV-1127 (RPK) (RLM), 2021 U.S Dist. LEXIS 162849, at *14 (E.D.N.Y. Aug. 27, 2021) ("I am 'bound to apply the law as interpreted by' the intermediate appellate court"); *Carrera v. DT Hospitality Grp.*, 2021 U.S. Dist. LEXIS 210894, at *27-29 (S.D.N.Y. Nov. 1, 2021) (citing other courts following *Vega* as support for the conclusion that liquidated damages are available for pay frequency claims) (internal quotation marks omitted); *Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534 (RPK) (SJB), 2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sept. 27, 2021) (same).

To be sure, decisions from the intermediate appellate courts can be "helpful indicators" of the direction the New York Court of Appeals may head, but this Court is not bound to follow those decisions in the face of "persuasive evidence" that the Court of Appeals would reach a different conclusion. *Zivkovic*, 2022 U.S. Dist. LEXIS 94839, at *5 (quoting *Reddington*, 511 F.3d at 133). Persuasive evidence, however, also includes "statutory language, pertinent legislative history, the statutory scheme set in historical context, [and] how the statute can be woven into state law with the least distortion to the total fabric[.]" *Id.* (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)).

As discussed above, these data points support the conclusion that the First Department erred in *Vega*. *See supra* at 5-13. Notably, the *Vega* court completely failed to address the overwhelming evidence that a "frequency of pay" claim is not a "wage claim" and therefore not subject to a private right of action under NYLL 198(1-a).

Furthermore, *Konkur* is precisely the sort of "relevant case law" that should lead the Court to conclude that, when the New York Court of Appeals eventually reaches this issue, it will not follow *Vega.* In *Konkur*, the New York Court of Appeals held that "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action." *Konkur*, 185 N.E.3d at 488 (internal citations omitted). In reaching this conclusion, the court noted the private causes of action the legislature recently added to Section 198. *Id.*; *see also* NYLL §§ 198(1-a) (providing private right of action for violation of Section 194); 198(1-b) (providing private right of action for violation of Section 195).

**B.**     **Alternatively, the Court Should Stay the Case Pending a Ruling in the *Grant* matter, Which Will Provide Additional State Court Guidance On the Availability of a Private Right of Action for Plaintiffs' Claim**

Plaintiffs' case is entirely dependent upon whether a private right of action exists for a frequency-of-pay claim.  That issue is not conclusively resolved.  Indeed, a Queens County court concluded (post-*Vega*) that the NYLL does ***not*** provide for a private right of action for these violations.  *Grant v. Global Aircraft Dispatch*, No. 720074/2019, 2021 N.Y. Misc. LEXIS 11125 at *4-7 (Queens Cnty Sup. Ct. Apr. 20, 2021).  Consistent with Defendant's above arguments, the trial court concluded that the plaintiff lacked a private right of action for a frequency of pay violation under NYLL §§ 191(1)(a)(1) or 198(1-a) because "payment of all wages in full, albeit on a bi-weekly basis, **does not constitute an 'underpayment**.'"  *Id.* at *6 (emphasis added).

The Second Department of the New York Appellate Division, a co-equal court to *Vega*, is now considering the matter.  *See Grant v. Global Aircraft Delivery Dispatch, Inc.*, App. Div. No. 21-03202 (2d Dep't).  That case has now been briefed and fully argued.  A decision is expected in the near future.

This Court has the inherent authority to control its own docket and to stay matters where appropriate.  *New York Power Authority v. U.S.*, 42 Fed. Cl. 795, 799 (Fed. Cl. 1999) (quoting *Landis v. North American Co.*, 299 U.S. 248 (1936)).  In deciding whether to grant a stay, courts in the Second Circuit consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  *United States v. Shapiro*, No. 21-CV-02475 (GRB) (JMW), 2021 U.S. Dist. LEXIS 220176, at *2 (E.D.N.Y. Nov. 15, 2021).

16

Here, Plaintiffs' interests will not be harmed by a brief stay pending the outcome of *Grant*. Plaintiffs do not allege any ongoing harm – indeed, they brought this Complaint in April 2023 for alleged pay-frequency violations that ended for them in 2018 and for other alleged putative class members no later than January 2021.  As such, there is no ongoing alleged harm.  Furthermore, this matter is still in its infancy, as discovery has not commenced and the Court has not entered a case management schedule.

As to the remaining factors, the Court's task in analyzing open issues of state law is to determine how the New York Court of Appeals would interpret the issue presented.  *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007).  The Second Department's ruling in *Grant* will provide an extremely important data point in that regard, which will ultimately aid the Court in making a well-reasoned decision to the benefit of the parties, the court, and the public at large.  Specifically, if the Second Department diverges from *Vega* it will both muddy the waters on how the Court of Appeals may ultimately rule and lead the Court of Appeals to take the case to address the split in decisions.

Accordingly, in the event the Court does not dismiss the Complaint for the reasons stated above, Defendant respectfully requests that the Court stay this matter pending a ruling in *Grant*.

## **CONCLUSION**

For the foregoing reasons, VSS respectfully asks the Court to enter an order dismissing the Complaint in its entirety, or alternatively, staying proceedings pending the resolution of the appeal in *Grant v. Global Aircraft Delivery Dispatch, Inc.*, App. Div. No. 21-03202 (2d Dept.).

Respectfully submitted,

*/s/ Kerri A. Wright*
Kerri A. Wright
PORZIO BROMBERG & NEWMAN P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
Telephone:  (973) 889-4327
Facsimile:  (973) 538-5146
Email:  kawright@pbnlaw.com

Adam J. Rocco
Brian W. Dressel
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone:  (614) 464-8250
Facsimile:  (614) 719-4788
Email:  ajrocco@vorys.com
bwdressel@vorys.com

* *Pro Hac Vice* motion forthcoming

*Attorneys for Defendant Victoria's Secret Stores, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 26th day of June, 2023, a copy of the foregoing *Memorandum of Support* was served via electronic mail on all counsel of record listed below:

> D. Maimon Kirschenbaum
> Josef Nussbaum
> 32 Broadway, Suite 601
> New York, NY 10004
> maimon@jk-llp.com
> jnussbaum@jk-llp.com
>
> *Attorneys for Plaintiff*

> <u>/s/ *Kerri A. Wright*</u>
> Kerri A. Wright
> *Attorney for Defendant*

19